UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DOUGLAS ALEXI MARADIAGA,

Petitioner,

v.

MARKWAYNE MULLIN et al.,

Respondents.

CASE NO. 2:26-cv-01449-JNW

ORDER GRANTING IN PART
HABEAS CORPUS PETITION

This matter comes before the Court on Petitioner Douglas Alexi Maradiaga's amended petition for a writ of habeas corpus, Dkt. No. 8.[1] The Court GRANTS the petition in part for the reasons stated below.

## 1.   BACKGROUND

Petitioner Douglas Alexi Maradiaga is a citizen of Honduras, who has been living in the United States for the last 13 years. Dkt. No. 9 ¶¶ 3, 5. Maradiaga first entered the United States in March 2010, fleeing gang violence in Honduras. *Id.* ¶¶

---

[1] Petitioner obtained counsel after filing his initial habeas petition in this matter. The Court granted the parties stipulated motion to amend the briefing schedule so that Petitioner could file a "counselled" amended habeas petition. Dkt. No.7. The petition is now fully briefed and ripe for review.

ORDER GRANTING IN PART HABEAS CORPUS PETITION - 1

3–4. He settled in Florida, married his wife in 2012, and had three children. He has been working full time to provide for his family ever since. His wife and three young children are all citizens. *Id*. ¶ 5.

Sometime after his initial entry, Maradiaga left and reentered the country on July 14, 2013. Dkt. No. 9 ¶ 6. He was taken into immigration custody at the Eloy Detention Center, Dkt. No. 13 ¶ 13, where he was scheduled for a deportation flight on August 1, 2013. The flight was cancelled and never rescheduled. *Id*. ¶ 7. On August 2, 2013, Maradiaga expressed fear of returning to Honduras. He underwent a credible fear interview and United States Citizenship and Immigration Services (USCIS) determined that he had a credible fear of return to Honduras. *Id*. ¶ 10. On August 13, 2013, Maradiaga was issued a Notice to Appear. Respondents state that "[f]or a reason unknown to [Enforcement and Removal Operations], USCIS never filed this NTA with the immigration court." *Id*. ¶ 11. Thus, Maradiaga was released from detention and placed under an Order of Recognizance, without a hearing scheduled. Dkt. No. 14-1 at 2. While on release, Maradiaga applied for an I-130, Petition for Alien Relative, which USCIS granted on August 24, 2015. *Id*. ¶ 13; Dkt. No. 9 ¶ 5. Maradiaga did not subsequently apply for an adjustment of status with USCIS until July 20, 2025—that application is pending. *Id*. ¶ 13.

In early April 2025, Maradiaga received a notice to appear for an appointment at the ICE Field Office in Jacksonville, Florida. Dkt. No. 9 ¶ 7. On April 16, 2025, he appeared for his appointment and ICE agents immediately detained him. Dkt. No. 13. ¶ 16. He was issued an NTA charging him as "an alien present in the United States who has not been admitted or paroled." Dkt. No. 14-5.

ORDER GRANTING IN PART HABEAS CORPUS PETITION - 2

He was not provided a reason for his detention or prior notice. He was placed in custody in three different ICE detention centers, two in Florida and one in Louisiana, before eventually being placed at the Northwest ICE Processing Center in Tacoma, Washington, where he remains in custody. Dkt. No. 13 ¶¶ 17–22.

Since his detention, which has spanned almost fourteen months, Maradiaga has had two bond hearings before an immigration judge ("IJ"), one on June 11, 2025, and one on January 8, 2026. Dkt. No. 14-7; 14-8. The IJ denied bond both times, citing lack of jurisdiction. *Id*. On August 23, 2025, the IJ denied Maradiaga's applications for cancellation of removal, and ordered him removed to Honduras. *Id*. ¶ 27. Maradiaga appealed to the BIA. Dkt. No. 13 ¶ 28.

## 2.  LEGAL STANDARD

**2.1  Habeas relief.**

Federal courts may grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) ("In state collateral litigation, as well as federal habeas

ORDER GRANTING IN PART HABEAS CORPUS PETITION - 3

proceedings, it is the petitioner who bears the burden of proving his case."); *see also Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) ("petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief" when challenging incarceration by the state under 28 U.S.C. § 2254). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

## 3.  DISCUSSION

### 3.1    Maradiaga is not subject to mandatory detention.

Respondents contend that Maradiaga is subject to mandatory detention, under 8 U.S.C. § 1225(b), during the duration of his removal proceedings. Dkt. No. 12 at 2–3, 6–7 (citing *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026)).[2] Maradiaga's petition primarily argues that his detention without a bond hearing has become unreasonably prolonged, regardless of which detention statute applies. Dkt. No. 8 at 1–2. But in his traverse, Maradiaga argues that he is subject to discretionary detention under Section 1226(a). Dkt. No. 15 at 3 n.1.

---

[2] The Court is aware of the circuit split on whether this provision applies to noncitizens arrested in the interior rather than at a border or port of entry. The Fifth and Eighth Circuit opinions are not binding on this Court and are inconsistent with this Court's view of the statutory text and relevant Ninth Circuit and Supreme Court authority interpreting it. *See e.g., Barrios Arroyo v. ICE Field Off. Dir.*, No. 2:26-CV-994-JNW, 2026 WL 1396575, at * 2 (W.D. Wash. May 19, 2026); *Jones v. Blanche et al.*, No. 2:26-CV-01335-JNW, 2026 WL 1413189, at *2 (W.D. Wash. May 20, 2026).

The Court has held more than once that a noncitizen arrested in the interior of the United States, rather than at a border or port of entry, is subject to discretionary detention under Section 1226(a) and not to mandatory detention under Section 1225(b). *See Barrios Arroyo v. ICE Field Off. Dir.*, No. 2:26-cv-994-JNW, 2026 WL 1396575, at *1–2 (W.D. Wash. May 19, 2026); *Jones v. Blanche*, No. 2:26-cv-01335-JNW, 2026 WL 1413189, at *1–2 (W.D. Wash. May 20, 2026). The same result follows here.

Maradiaga was not arrested at a port of entry or at a border. Dkt. No. 14-5 at 2. He was residing in the United States, not seeking admission when he was arrested by ICE agents. The operative NTA issued on April 16, 2025, charged Maradiaga as a noncitizen "present in the United States who has not been admitted or paroled" and expressly declined to classify him as an "arriving alien." *Id. See Cotoc Yac De Yac v. Hermosillo*, 2:25-cv-02593-DGE-TLF, 2026 WL 124334, at *3 (W.D. Wash. Jan. 16, 2026) (relying on identical NTA language as evidence noncitizen was not "seeking admission"); *Garcia Gabriel v. Hermosillo*, 2:25-CV-02594-DGE-GJL, 2026 WL 194233, at * 3 (W.D. Wash. Jan. 26, 2026) (finding same).

None of Respondent's arguments to the contrary make sense. Respondents argue that the fact Maradiaga was "re-detained after reporting as directed in the interior of the United States" is a fact that "reinforce[s] the [] statutory classification under 8 U.S.C. § 1225(b)." Dkt. No. 12 at 7. Respondents have it backwards. The fact that Maradiaga was detained while living in Florida and voluntarily reporting to ICE for a check-in appointment rebuts the conclusion that

ORDER GRANTING IN PART HABEAS CORPUS PETITION - 5

he was detained at a border or a port of entry. Characterizing this appointment as an "encounter" where a new NTA was issued does not "place[] Petitioner within 8 U.S.C. § 1225(b)" as Respondents contend. *Id.* at 8.

Respondents also argue that Maradiaga's criminal conviction reinforces his classification under Section 1225(b), but a previous criminal record does not inform whether Section 1225(b) applies. It may inform whether Maradiaga violated the terms of a release order or whether he is subject to another detention statute such as Section 1226(c), but Respondents do not make that argument. And nothing in the record indicates that Maradiaga's OREC was revoked for this reason. Dkt. No. 14-1.

Finally, Respondents argue that Maradiaga's "final order of removal with only an administrative appeal pending before the BIA" reinforces his Section 1225(b) classification. A final order of removal pending appeal is not a final order of removal. *Abdisalan v. Holder*, 774 F.3d 517, 523 (9th Cir. 2014), as amended (Jan. 6, 2015) (order of removal becomes final after appeal to the BIA or expiration of period in which noncitizen may appeal to the BIA).

Thus, Maradiaga's detention is governed by Section 1226(a), not Section 1225(b), and he is not subject to mandatory detention. As such, the Court declines to conduct the *Banda* analysis urged by parties. *See Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1113 (W.D. Wash. 2019). *Banda* applies when a petitioner is subject to mandatory detention under Section 1225(b) and when the court must determine whether the petitioner's detention without a bond hearing has become unreasonably prolonged. *Id.* at 1118.

**3.2    The appropriate remedy is a bond hearing.**

Maradiaga requests "release unless Respondents hold a custody hearing for Petitioner before an immigration judge within 14 days." Dkt. No. 8 at 16. Consistent with the approach this Court and others in this District have taken, the appropriate remedy is a bond hearing before an immigration judge, not immediate release. *See Barrios Arroyo*, 2026 WL 1396575, at *3; *Dovlatov v. Hernandez*, No. 2:26-cv-00826-JNW, 2026 WL 1030454, *3 (W.D. Wash. Apr. 16, 2026); *Rahmani v. Bondi*, No. C26-362-KKE, 2026 WL 638364, *6 (W.D. Wash. March 6, 2026); *Toktosunov v. Wamsley*, No. 2:25-cv-1724-TL, 2025 WL 3492858, *6 (W.D. Wash. Dec. 5, 2025). Because Maradiaga was wrongly denied the bond hearing to which Section 1226(a) entitles him, the appropriate remedy is to order that hearing. If Respondents fail to provide the hearing within fourteen days, Maradiaga must be released. *See Jimenez v. Wolf*, No. 19-CV-07996-NC, 2020 WL 1082648, at *4 (N.D. Cal. Mar. 6, 2020).

The bond hearing must be conducted by an immigration judge under Section 1226(a) and its implementing regulations. Because ordering the bond hearing that Maradiaga was wrongly denied is enough to remedy this situation, the Court does not reach Maradiaga's alternative request that any such hearing be conducted "before this Court." Dkt. No. 8 at 16.

## 4.    CONCLUSION

Accordingly, the Court orders as follows:

1.  The Amended Petition for a Writ of Habeas Corpus is GRANTED in part. Dkt. No. 8.

ORDER GRANTING IN PART HABEAS CORPUS PETITION - 7

2.  Within FOURTEEN (14) days of this order, Respondents must either provide Maradiaga with a bond hearing under 8 U.S.C. § 1226(a), and its implementing regulations, or release him under an appropriate order of supervision.

3.  If the individualized bond hearing is not conducted within fourteen days of this order, Respondents MUST immediately release Maradiaga under appropriate conditions of supervised release.

4.  All other relief is denied, without prejudice.

Dated this 12th day of June, 2026.

Jamal N. Whitehead
United States District Judge

ORDER GRANTING IN PART HABEAS CORPUS PETITION - 8